**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| **MARILYN POLING,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:05CV432** |
| ) | |
| **TRANS UNION, LLC, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This matter is before the court for a report and recommendation pursuant to 28 U.S.C. §

636(b)(1)(B) regarding the Defendant Experian Information Solutions, Inc.'s (Experian) motion

to transfer venue of the pending matter to the Newport News Division of this court. (Mot.

Transfer Venue Newport News Div. Supp'ing Mem. Experian Information Solutions, Inc.

(Experian's Mem.) (docket entry no. 6)). The motion is one in a long line of such motions and/or

consent orders filed in this division alone in similar cases involving consumer protection claims,

*e.g.*, inaccurate credit reporting. (*See* Experian's Mem., Ex. A, identifying more than two dozen

such motions and/or resulting orders filed within just the past two years). Common venue issues

are involved in all of these cases. In the interest of consistency and predictability, the court

recommends that a consistent analysis be employed such as that discussed here for possible

reference in future cases. The court will therefore analyze the subject area generally, taking into

account what it perceives to be relevant venue factors to consider in all cases, and then place this

case with its particular facts and circumstances within that framework with a resulting

recommendation for resolution of the pending motion.

**Analysis**

Motions to transfer a case from one division of a court to another division within the same district are addressed in 28 U.S.C. § 1404(b):

> (b) Upon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, from the division in which pending to any other division in the same district. Transfer of proceedings in rem brought by or on behalf of the United States may be transferred under this section without the consent of the United States where all other parties request transfer.[1]

There is a dearth of case law in this circuit concerning intradistrict transfers,[2] but it has been held elsewhere that the same relevant factors must be considered in regard to an intradistrict transfer as with a transfer from one district to another district pursuant to § 1404(a) subject, however, to "a less rigorous standard." Hanning v. New England Mut. Life Ins. Co., 710 F. Supp. 213, 215 (S.D. Ohio 1989) ("[i]ntradivisional transfers pursuant to 28 U.S.C. § 1404(b) are discretionary transfers subject to the same analysis as under § 1404(a) but apparently judged by a

---

[1] 28 U.S.C. § 1404(a) concerns motions for change of venue between different districts (not involved here) and the remaining subsection (c) authorizes a court to "order any civil action to be tried at any place within the division in which it is pending."

[2] One district court in the circuit has spoken in a reported opinion to the underlying rationale of the statutory provision, but only in the most general terms:

> [s]ubsection (b) extends to all judicial districts and permits transfer of cases between divisions, and was intended to give the district court discretion to transfer a case from one division to another in the same district, regardless of the residence of the single defendant, upon the ground of the convenience of parties and witnesses and in the interest of justice.

Cliff Weil, Inc. v. Bailey, 209 F.Supp. 836, 837 (E.D.S.C. 1962).

less rigorous standard").  Such an approach is similarly endorsed in reputable treatises:

> Even though Section 1404(b) does not contain the same language
> as Section 1404(a), which authorizes transfer if it is 'for the
> convenience of parties and witnesses' and 'in the interest of
> justice,' the courts have imported these same requirements into
> Section 1404(b), although some courts have said the showing
> required under 28 U.S.C. § 1404(b) as to the two requirements is
> less rigorous than that required under Section 1404(a).  Thus, the
> traditional deference given to plaintiff's choice of forum under
> Section 1404(a) is correspondingly less under Section 1404(b)."

17 James W. Moore, Moore's Federal Practice § 111.21[2] (3d ed. 2005) (citations omitted).

Accordingly, the Fourth Circuit's holding in Landers v. Dawson Construction Plant, Ltd.,

No. 98-2709, 1999 U.S. App. LEXIS 28474 (4th Cir. Nov. 2, 1999) (unpublished) that involved

a § 1404(a) transfer motion is relevant.  In Landers, the Court of Appeals identified seven factors

that courts consider in resolving motions pursuant to § 1404(a):

> [t]he following factors are commonly considered in ruling on a
> motion to transfer:  (1) the ease of access to the sources of proof;
> (2) the convenience of the parties and witnesses; (3) the cost of
> obtaining the attendance of the witnesses; (4) the availability of
> compulsory process; (5) the possibility of a view by the jury; (6)
> the interest in having local controversies decided at home; and (7)
> the interests of justice.

Id. at *5.  See also, BHP Int'l Inv., Inc. v. OnLine Exch., Inc., 105 F.Supp. 2d 493, 498 (E.D.

Va. 2000) (analyzing the same factors in a case involving a forum selection clause of a contract).

Various district courts in the Fourth Circuit have further clarified that "[t]he interest of

justice factors include such circumstances as 'the pendency of a related action, the court's

familiarity with the applicable law, docket conditions, access to premises that might have to be

viewed, the possibility of unfair trial, the ability to join other parties, [and] the possibility of

harassment.'"[3]  GTE Wireless, Inc. v. Qualcomm, Inc., 71 F.Supp. 2d 517, 519 (E.D. Va. 1999)

(quoting Hester Indus., Inc. v. Stein, Inc., No. 96-719-A, 1996 U.S. Dist. LEXIS 19926, at *6

(E.D. Va. Oct. 3, 1996)).  Furthermore, courts in other circuits that have addressed motions to

transfer pursuant to § 1404(b) have considered similar factors.  For example, in Clear Channel

Outdoor, Inc. v. Rubloff Oakridge Algonquin, L.L.C., the court held that "[a] § 1404(b) transfer

is proper where (1) venue is proper in the transferor district, (2) venue would be proper in the

transferee district, and (3) the transfer will serve the convenience of the parties and witnesses,

and the interest of justice."  No. 03 C 3063, 2003 U.S. Dist. LEXIS 18422, at *8 (N.D. Ill. Oct.

16, 2003) (unpublished).  Similarly, in considering a motion to transfer under § 1404(b), the

court in Bain v. Yuma Petroleum Co., considered the same three factors and also noted that:

> [t]he private interests that may warrant a transfer of venue include:
> plaintiff's initial choice of forum, the relative ease of access to
> sources of proof; the availability of compulsory process for the
> attendance of unwilling witnesses and the costs of obtaining the
> attendance of witnesses; and, the situs of material events.

No. 95 C 3240, 1995 U.S. Dist. LEXIS 18287, at *8 (N.D. Ill. Dec. 8, 1995) (unpublished).

Additionally, it has been held that the public interests to be weighed include:  "(1) the speed of

the proceedings; (2) the court's familiarity with applicable law; and (3) the relation of the

community to the occurrence and the desirability of resolving the controversy in its locale."

Clear Channel, 2003 U.S. Dist. LEXIS 18422, at *10.

Considering the various sources, the court concludes that the following factors are the

---

[3]The court does not understand what the factor of possibility of harassment may
encompass, other than a concern for forum shopping or vexatious litigation that the court deems
to be included within the consideration of the remaining factors or otherwise subject to alternate
remedies.

relevant considerations for determining appropriate venue.

*Plaintiff's Choice of Forum*

      Deference is typically given to a plaintiff's choice of forum if it is that party's "home"

forum, but such deference is lessened if the plaintiff chooses a "foreign" battleground:

> [t]he weight given the plaintiff's choice varies in proportion to the connection between the forum and the cause of action.  Thus, a plaintiff's choice of its home forum is given more weight than its choice of a foreign forum.  When a plaintiff chooses a foreign forum and the cause of action bears little or no relation to that forum, the plaintiff's chosen venue is not entitled to such substantial weight.

GTE Wireless, 71 F.Supp. at 519 (citations omitted).  Such reasoning was  echoed by a court in

this division (J. Payne) in a 2003 patent case:

> The initial choice of forum, from among those possible under the law, is a privilege given to the plaintiff.  Medicenters of America, Inc. v. T & V Realty & Equipment Corp., 371 F.Supp. 1180, 1184 (E.D. Va. 1974).  To overcome that privilege, a movant "bears the burden of demonstrating that the balance of convenience among the parties and witnesses is *strongly* in favor of the forum to which transfer is sought."  Id. (emphasis added).  Therefore, the plaintiff's choice of forum is ordinarily entitled to substantial weight. Acterna, L.L.C. v. Adtech, Inc., 129 F.Supp. 2d 936, 938 (E.D. Va. 2001).  But, a plaintiff's chosen venue is not given such substantial weight when the plaintiff selects a forum other than its home forum and the claims bear little or not relation to the chosen forum. Intranexus, Inc. v. Siemens Med. Solutions Health Serv. Corp., 227 F.Supp. 2d 581, 583 (E.D. Va. 2002).

Koh v. Microtek Int'l., Inc., 250 F.Supp. 2d 627, 633 (E.D. Va. 2003).[4]

---

    [4]Medicenters of America, Inc. v. T&V Realty & Equipment Co., involved a § 1404(a) motion concerning the alleged breach of a contract between corporate parties whose principal places of business were both elsewhere.  The court (J. Merhige) granted a motion to transfer based on the lack of evidence in the then-present record of the plaintiff  business entity having sufficient contacts with the selected forum to constitute "doing business" sufficient to overcome a preference for  the convenience of the several identified witnesses located in the proposed

Moreover, reference is again appropriate to Moore's Federal Practice in which it is observed that since motions under § 1404(b) are less rigorously judged than under § 1404(a), a plaintiff's choice of forum receives even less deference.  Moore, *supra* § 111.21[2 ] (3d ed. 2005).  It therefore follows that if a plaintiff's choice of forum is a foreign one, that factor is given some weight, but not "such substantial weight" as with the selection of a home forum.  In this same regard, the fact that a foreign business entity may maintain a registered agent in a particular locale for purposes of accepting service of process is of little, if any significance, especially where the location can be changed at will, as occurred here.  (Experian's Mem., ex. A-20 (Lloyd v. Woodridge II Auto Co., No. 3:03CV879 (E.D. Va. Feb. 6, 2004)).[5]

*Ease of Access to the Sources of Proof*

Accessibility to evidentiary sources is considered in the context of the discovery process. Samsung Elecs. Co. v. Rambus Inc., 386 F. Supp. 2d 708, 716 n.11 (E.D. Va. 2005).  As noted in Moore's Federal Practice:  "[a]lthough this factor is usually considered in the context of securing the documents for trial, it is also relevant in terms of the ease of conducting merits-related discovery in a location that is near the pertinent documents."  Moore, *supra* § 111.13[1][h].   At the same time, "the comparatively low cost of transporting documents makes their location a less pressing consideration in deciding this motion."  Pennwalt Corp. v. Purex Indus., Inc., 659 F.

––––––––––––––––––––

forum whose relevance and particular circumstances were proffered with specificity, unlike the situation in the present case.

[5]Experian's  apparent effort to rebut Plaintiff's choice of forum by changing its registered agent from one office of its Virginia counsel to another office of the same firm is transparent at best.  Nevertheless, the circumstance of where the registered agent may be located  at any one time for an entity that maintains its principal places of business out-of-state is of little moment in the analysis.

Supp. 287, 290 (D. Del. 1986).  Nevertheless, the factor merits consideration if document

production would be "voluminous", or if non-party witnesses have possession of documents and

are beyond the reach of  compulsory process.  Moore, *supra* § 111.13[1][h].

*The Convenience of the Parties*

This factor again requires consideration of the plaintiff's choice of forum.  More

specifically:

> [T]his factor is chiefly operative in cases where the plaintiff chooses a forum
> away from home.  Under those circumstances, plaintiff's venue choice is given
> less weight and if the venue substantially inconveniences defendants, transfer may
> be ordered.  On the other hand, when plaintiffs file suit in their home forum,
> convenience to parties rarely, if ever, operates to justify transfer.  Plaintiffs are
> assumed to have filed suit in the forum most convenient for them.  Defendants
> may be inconvenienced by litigating in plaintiffs' home forum, but transfer would
> likely serve only to "shift the balance of inconvenience" from defendant to
> plaintiff.

Bd. of Trustees v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1259 (E.D. Va.

1988); *see also* Eastern Scientific Mktg., Inc. v. Tekna-Seal, Inc., 696 F. Supp. 173, 180 (E.D.

Va. 1988).  Overall, in considering the convenience of the parties with regard to accessibility of

discovery, a combination of relevant circumstances should be considered, namely, "where the

parties are located, where the acts complained of took place, the location of pertinent documents,

financial costs, and such other important factors that the court finds relevant in deciding whether

to transfer an action to another district."  Shu v. Durilon Brake Co., No. 2:95CV00254, 1995

U.S. Dist. LEXIS 13132, at *8-9 (M.D.N.C. Aug. 12, 1995) (unpublished).[6]

---

[6]Such considerations include those urged by the Plaintiff here concerning her own travel
time and general convenience and that of counsel.  (Pl.'s Mem. at 7-9).

The Convenience of the Witnesses

In considering this factor, courts have made a distinction between party and non-party witnesses:  "[p]arty witnesses are the parties themselves and those closely aligned with a party, and they are presumed to be more willing to testify in a different forum, while there is no such presumption as to non-party witnesses." Samsung, 386 F. Supp. 2d at 718 (quoting Ramsey v. Fox News Network, LLC, 323 F. Supp. 2d 1352, 1356 (N.D. Ga. 2004)).  It is therefore logical to weigh the convenience of non-party witnesses more heavily than that of party witnesses.  Id. Moreover, in considering the factor, the court should be given "reliable information identifying the witnesses involved and specifically describing their testimony."  Baylor, 702 F. Supp. at 1258.  Such specificity allows the court to determine how much weight should be given to the inconvenience of particular witnesses.  For example, "[i]nconvenience to a witness whose testimony is cumulative is not entitled to greater weight.  By contrast, greater weight should be accorded inconvenience to witnesses whose testimony is central to a claim and whose credibility is also likely to be an important issue."  Id.  Also, it should be ascertained whether a "central" witness is willing to travel for purposes of the litigation.  Samsung, 386 F. Supp. 2d at 719.  If a key witness is willing, their potential inconvenience reduces the weight to be afforded to the factor in the overall analysis.  Id.

This district has also observed that while in-person testimony is obviously preferable, videotaped depositions are a sufficient substitute.  Id.  "Somewhat less weight is given to witness inconvenience when a party is unable to demonstrate with any particularity that videotaped deposition testimony will be inadequate, and that live testimony is critical."  Id. Finally, like the "convenience of the parties" factor, if a transfer would only serve to shift the

inconvenience from the defendant's witnesses to the plaintiff's witnesses, the factor is effectively neutralized.  Baylor, 702 F. Supp. at 1258.

*The Cost of Obtaining the Attendance of the Witnesses*

In In Re Campbell Transportation Co., the court held that where the locations of the respective court facilities (the Western District of Pennsylvania and the Northern District of West Virginia) were in relatively close proximity to each other, the prospective cost of securing the attendance of witnesses was not entitled to much weight in resolving the venue issue - "there [w]as ease of access to sources of proof in either venue."  368 F. Supp. 2d 553, 556 (N.D. W. Va. 2005); *see also* Cole v. Sherman Fin. Group, LLC, No. 1:03-CV-271, 2003 U.S. Dist. LEXIS 22562, at *10 (E.D. Tex. Oct. 28, 2003) (unpublished) ("the cost of obtaining attendance of witnesses from approximately 90 miles away is negligible and is not a factor weighing in favor of venue transfer."); Ledoux v. Isle of Capri Casinos, Inc., 218 F. Supp. 2d 835, 838 (E.D. Tex. 2002) ("The difference in cost between making witnesses attend trial in Beaumont  [Texas] or in Lake Charles [Louisiana] is negligible.  Again, for the most part we are talking about making some people have to drive about an hour to get to Beaumont.  This factor does not favor either party.").  On the other hand, where the two venues under consideration are a considerable distance from each other, the factor is entitled to greater weight.  *See* Tong v. Direct Trading Corp., No. 02 C 8331, 2003 U.S. Dist. LEXIS 17427, at *16-17 (N.D. Ill. Sept. 30, 2003) (unpublished) (holding that since all of the defendant's witnesses resided in Texas and the plaintiff was the only potential witness who resided outside the state (Northern District of Illinois), the costs of obtaining the attendance of witnesses would be considerably decreased overall if the case was transferred to Texas.).

*The Availability of Compulsory Process*

Pursuant to Federal Rule of Civil Procedure 45(b)(2), federal district courts only have the power to subpoena witnesses for trial who are located within the district of the court, or who are within 100 miles of where the trial would be held.  "Thus, that the majority of material non-party witnesses are not subject to the compulsory process of one of the courts, but are within the subpoena power of the other, militates heavily in favor of the latter district."  Moore, *supra* § 111.13[1][g].  Nevertheless, "[a]lthough key witnesses beyond the subpoena power of one of the respective districts weighs against the action proceeding there, that alone will not prevent transfer because their testimony may be introduced by using the witnesses' depositions at trial."  Id.  In any event, the factor is presumably of little relevance to an intradistrict transfer pursuant to § 1404(b) except to the extent of a particular division's geographical proximity to those witnesses located within 100 miles, but beyond a district's boundaries.

*The Possibility of a Jury View*

Where it may be necessary for a jury (or the court as factfinder) to view immovable evidence, some weight is typically credited to having trial proceedings conducted in the district, if not the division, where the evidence is located.  *See* Dicken v. United States, 862 F. Supp. 91, 94 (D. Md. 1994); *see also* Moore, *supra* § 111.13[1][h].  At the same time, "[o]n the other hand, photographs or videotapes of the [evidence] may suffice, especially when a visual inspection is not of utmost importance."  Moore, *supra* § 111.13[1][h].

*The Interest in Having Controversies Decided in the Home Forum*

In Gulf Oil Corp. v. Gilbert, 330 U.S. 501 (1947), the Supreme Court recognized that "[t]here is a local interest in having localized controversies decided at home."  Id. at 509.  The

-10-

rationale for such a holding is that "[i]n cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only."  Id.  However, in regard to intradistrict transfers pursuant to § 1404(b), it hardly seems likely that the relatively short distance between the divisions of this court (not more than 100 miles, plus or minus) merits much, if any, consideration where the community's common interests extend beyond any particular locality.

*Court Acumen and Docket Congestion*

Although there is the suggestion in relevant case law, as urged by the Plaintiff, that deference is due to the judicial venue that may be "more familiar" with the subject area involved, it can hardly apply to an intradistrict situation, aside from whether any court would presume itself to be better "equipped" than any other court in whatever jurisdiction.  *See, e.g.*, GTE Wireless, Inc., 71 F. Supp. 2d at 519; Pl.'s Mem. at 9-10.  It may make some sense in a specialized area, such as the case management experience of a particular court in mass tort litigation, *e.g.*, asbestos multidistrict litigation, but such a circumstance does not apply to the interpretation and application of a statutory scheme with which all the courts in the same district have become thoroughly familiar, as here.  (Findings ¶ 10).

As to issues of docket congestion, that is, that the Richmond division of the court is the preferred forum within the district because it may be less congested and/or more efficient, consideration of the factor has already been addressed in a succinct and pervasive manner by the court:

> In its filings [plaintiff] argues that docket considerations favor
> allowing the matter to proceed in this court so that [plaintiff] may
> take advantage of the rocket docket.  In fact, a thorough analysis of

> [plaintiff]'s argument convinces this court that docket
> considerations are the primary reason that [plaintiff] seeks to be
> heard here.  The interests of justice are not served by such blatant
> forum shopping.  As this court has stated in the past, such docket
> considerations cannot be the primary reason for retaining a case in
> this district.  This Court cannot stand as a willing repository for
> cases which have no real nexus to this district.

Telepharmacy Solutions, Inc. v. Pickpoint Corp., 238 F.Supp. 2d 741, 744 (E.D. Va. 2003).

*The Interests of Justice*

This "catchall" factor "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties."  Baylor, 702 F. Supp. at 1260.  Such factors, not already identified, include "the pendency of a related action, the court's familiarity with the applicable law, docket conditions . . . the possibility of unfair trial, the ability to join other parties and the possibility of harassment."  Id.; *see also* Moore, *supra* § 111.13[1][n] ("[M]ost courts consider [the interests of justice] to be made up of an amalgam of the public interest factors relating to the efficient administration of the court system, such as the interests of conserving judicial resources, avoiding court congestion, and the difficulties of applying another state's law." (citations omitted)).

*Location of Material Events*

Moore's treatise indicates that courts are traditionally willing to transfer cases to the districts in which the events giving rise to the suits occurred.  More specifically, "[i]f none of the operative events in the lawsuit took place in the district in which the action was originally filed, a motion to transfer to the district in which the events occurred is likely to succeed.  Transfer to the place where the operative events occurred may be warranted because often the majority of the significant witnesses and the physical evidence also are located there."  Moore, *supra* §

111.13[1][d][I] (citing <u>Dicken v. United States</u>, 862 F. Supp. 91, 94-94 (D. Md. 1994) (holding

that case should be transferred to Kansas, partly because that is where the accident at issue

occurred); <u>Chedid v. Boardwalk Regency Corp.</u>, 756 F. Supp. 941, 944-45 (E.D. Va. 1991)

(holding that the case should be transferred to New Jersey, partly because that was where the

accident occurred)).  Furthermore, a review of the prior decisions of the courts of this division

reveals that the location where "a substantial portion of the events or omissions giving rise to the

claim" has often been a decisive consideration.  (Experian's Mem., ex. A-20).

### The Pending Motion

The court deems the following to be the undisputed facts and reasonable inferences upon

which the pending motion can be resolved (Findings):

1.  The Plaintiff resides in the proposed transferee division of the court (Newport
    News Division) and has since at least 1994.  (Pl.'s Mem. in Opp. Experian's Mot.
    Transfer Venue (Pl.'s Mem.) (Attached aff. of Pl. ¶ 2); Experian's Mem., ex. C).

2.  The Complaint alleges violations of the Fair Credit Reporting Act by Experian's
    failure to maintain reasonable procedures for the investigation of consumer
    complaints regarding inaccurate entries in credit reports and for the failure to
    conduct a proper reinvestigation of the Plaintiff's complaints regarding adverse
    information in her credit file.  (Compl.).

3.  The Plaintiff alleges damages in the form of "loss of credit, loss of the ability to
    purchase and benefit from credit, mental and emotional pain and anguish, and
    humiliation and embarrassment."  (Compl. ¶¶ 21, 26, 32, 36; Pl.'s Rule 26(A)(1)
    Discl. (docket entry no. 26) ¶ III(a)).

4.  The only two witnesses in the fourteen groups of proposed witnesses identified by
    the Plaintiff who are known to reside in the division (Richmond) where suit was
    filed are her son and daughter-in-law.  <u>Id.</u>, ¶ 3; Pl.'s Rule 26(A)(1) Discl. ¶¶ 8-9.

5.  The Plaintiff has identified additional potential witnesses, all of whom, however,
    are located outside this state, let alone district, including Maryland, Delaware,
    Ohio, and South Dakota.  (Pl.'s Rule 26(A)(1) Discl. ¶¶ 5-7, 10-11).

6.     There are no locations or objects that would be the subject of a potential view by the factfinder and all relevant documentation is in the possession of the parties and therefore presumably accessible.

7.     Experian asserts that it intends to depose and thereby possibly call as trial witnesses numerous individuals who presumably reside in the proposed transferee division (Newport News), including family members, friends, neighbors, and treating physicians, but no Rule 26(A)(1) disclosures have been made to that effect by Experian as required by the court's Scheduling Order. (Experian's Reply Mem. at 9-10; Scheduling Order (docket entry no. 16)).

8.     Experian's principal place(s) of business are located in Southern California and Texas. (Experian's Mem., Anthony aff. ¶ 4; Experian Information Solutions, LLC's Reply Br. Supp. Mot. Transfer Venue to EDVA, Newport News Div. (Experian's Reply Mem.) (docket entry no. 25) at 7; Pl.'s Mem. at 7).

9.     Experian's registered agent for purposes of acceptance of service of process was located within the Richmond Division of this court when the Complaint was duly served by Plaintiff, but Experian transferred the location of its registered agent to the Newport News Division of this court during the pendency of the action. (*See* Return of Service forms (docket entry no. 2). (Experian's Reply Mem. at 4).

10.     All divisions of the court entertain similar consumer protection claims and all related issues on a regular basis and have over time. (*See, e.g.*, Experian's Mem., ex. A (separate Orders transferring cases to all other divisions)).

Consumer protection cases such as this one involving credit reporting agency (CRA) issues must be distinguished from other types of actions in regard to venue considerations because of the very nature of the parties involved and their relationship. Necessarily, such actions involve only three national (if not international) CRAs and actions by any of the CRAs that can take place in any number of diverse locations with direct impact on the plaintiff consumer being only in the form of the consumer, or someone from whom the consumer is seeking some form of financial assistance, accessing the subject information. The cases do not involve direct, localized contact between the parties such as are typically the situation in contract or tort where the actions that are the basis of any cause of action are centralized, *e.g.*, the scene of

the accident.  Accordingly, venue considerations are more ethereal in the sense of an identifiable situs in these consumer protection cases, especially if – as here – there are no specific acts alleged of any false credit information being used to the consumer's detriment.  *See* <u>Medicenters of America, Inc. v. T&V Realty & Equip. Co.</u>, 371 F.Supp. at 1182 ("a different standard applies with respect to corporate residence for venue purposes . . . .").  With this perspective, the court will endeavor to analyze each of the identified factors in light of the undisputed facts adduced to this point in the case.

The Plaintiff has resided in the Newport News division of the court for a prolonged period and the only witnesses she has identified who reside in the Richmond division where suit was filed are close family members who it is reasonable to infer would be less inconvenienced by traveling less than 100 miles for trial than witnesses who were not so closely identified with a party.  (Findings ¶¶ 1, 4).  Furthermore, although the Plaintiff alleges damages that include embarrassment and humiliation, no other witnesses such as neighbors, friends, or treating sources have been identified in required pre-trial disclosure to justify a deference to the proposed transferee venue.  (Findings ¶¶ 3, 4).  In fact, the Plaintiff has identified potential witnesses in several other states who presumably relate to aspects of what Plaintiff alleges to be the unreasonable re-investigation of her complaint(s) and there is no indication of a witness' location outside the district, but still within the subpoena power of the court, that creates a preference for one division over the other.  (Findings ¶ 5).  There is no accident scene or other tangible thing for the factfinder "to go see," and the only salient events associated with the Plaintiff's home forum are, presumably, the communications among the parties concerning her complaints and Experian's responses.  Such contacts, initiated anywhere, hardly focus attention on a particular

-15-

venue.

At the same time, Experian's choice of where to have service accepted in a state other than its principal place(s) of business is of no significance, including any preference to be given for having moved its registered agent to the division during the pendency of the action where transfer is sought.  (Finding ¶ 9).  Moreover, as previously noted, the court does not believe that a particular court's familiarity with or, in fact, unfamiliarity with a body of statutory and case law, or a court's particular docket circumstances, should have any impact on the analysis, especially when considering an intradistrict transfer where all divisions of the court are quite "familiar" with the legal landscape involved.  The localities that are involved in the venue choice (Richmond and Newport News) are not so geographically removed from each other, or otherwise so diverse in their common interests, to justify a preference for resolving conflicts in a particular venue.   Finally, the case has been pending for several months, and although not for an inordinate period, the court and the parties have an interest in expeditious resolution.

The picture that develops, therefore, is one where the are no clear distinguishing features, especially as to events or actions taking place in one forum or the other, that would be as decisive a factor as such circumstances have been in similar cases in which intradistrict transfer was ordered in this district.[7]  Accordingly, the only factor that tips the balance – ever so gently – is the slight deference to be given to the plaintiff's selection of a nearby forum.  Koh, 250 F.Supp. 2d at 633.

---

[7]The court has not been supplied with any specificity regarding the circumstances of any proposed witness in terms of their potential significance to the case, and therefore the court is constrained to consider the factor neutral as between the parties, subject to whatever additional offering the district court may entertain upon consideration of this report.

-16-

## CONCLUSION

For the reasons stated, it is recommended that Experian's motion to transfer venue be DENIED.

Let the Clerk forward a copy of this report and recommendation to the Honorable Richard L. Williams and to all counsel of record.

It is so ORDERED.

                                      _____/s/_____
                                        Dennis W. Dohnal
                                        United States Magistrate Judge

Dated: November 2, 2005